# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 11, 2013 Session

## LASONYA MORROW v. RAY ANTHONY MCCLAIN

**Appeal from the Chancery Court for Davidson County**
No. 1247II     Carol L. McCoy, Chancellor

---

**No. M2012-01915-COA-R3-CV - Filed August 29, 2013**

---

A man and woman lived together for six years and worked jointly on a number of business ventures during that period, but never married. After their relationship ended, the woman filed a complaint for a division of property, under the theory that the parties had entered into an implied partnership. The trial court heard conflicting testimony as to the respective contributions of each party to the acquisition, improvement and preservation of the properties at issue. The court declined to find that a partnership had existed between the parties, but ruled that the woman had an interest in all the real property acquired during the relationship. The court awarded her one parcel which the parties owned as cotenants in common and an additional $50,000 based on the value of her interest in the other properties. The man argues on appeal that the trial court overestimated the woman's contributions during the relevant period and underestimated his own contributions. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Edward Jordan Gross, Nashville, Tennessee, for the appellant, Ray Anthony McClain.

Mark Christopher Scruggs, Nashville, Tennessee, for the appellee, LaSonya Morrow.

## OPINION

### I. A WORKING RELATIONSHIP

Ray Anthony McClain owns and operates a dry cleaning business in Nashville called BGM Cleaners. LaSonya Morrow is a long-time employee of the Tennessean newspaper. The parties began dating in 2003 and became romantically involved. Mr. McClain was living

at the time in a home he owned on Chesapeake Place. In 2005, he left Chesapeake Place and moved into Ms. Morrow's home on North Eighth Street. He subsequently turned his former home into rental property.

During the time that they were together, Mr. McClain and Ms. Morrow bought a number of pieces of real property in Nashville. They refurbished houses on some of the properties and rented them out. In 2007, Mr. McClain gave his sister $5,000 for a quitclaim deed on her house at 202 Myrtle Street and assumed payment of the remaining debt of about $65-70,000 on the mortgage. The parties intended to remodel the home as a residence for themselves and Ms. Morrow's three children, but it became evident that the existing structure was unsuitable for that purpose, and they decided to demolish it and build a new house on the property. The construction was financed through a construction loan that Mr. McClain obtained.

Mr. McClain hired a number of subcontractors for foundation work and framing, but performed a great deal of the manual labor involved in the demolition and rebuilding of the house himself. Ms. Morrow testified she and her children also participated at every stage of construction, but Mr. McClain disputed her testimony as to the magnitude of their efforts, asserting that their contribution was relatively minor. In any case, the project took two years to complete.

On February 2, 2009, after the home was finished, the parties took out a new mortgage. Mr. McClain and Ms. Morrow co-signed the $210,000 loan and the mortgage that secured it. The proceeds of the loan were used to pay off the remaining mortgages on Myrtle Street and on the Chesapeake Place property owned by Mr. McClain. Of the $69,000 that remained, Ms. Morrow used $8,000 or $9,000 to pay off a debt, and Mr. McClain took control of the rest because he believed that it belonged to him. Under questioning at trial, he could not give an exact account of his disposition of that money, but it appears that it was primarily used to purchase other properties and to pay off credit card debts.

The parties refinanced the Myrtle Street property on June 30, 2011 to pay off debts associated with other real estate purchases and renovations. At Mr. McClain's insistence, the new mortgage was put solely in Ms. Morrow's name, as was the note, in the amount of $237,829. During the time that the parties lived together in the Myrtle Street home, Mr. McClain paid the monthly mortgage, but Ms. Morrow paid for the utilities and household expenses, as well as for Mr. McClain's medical insurance.

The other properties acquired by the parties during the time they were together included five parcels that were titled solely in Mr. McClain's name and two that were titled in the names of both Mr. McClain and Ms. Morrow as tenants in common. These were a

parcel of undeveloped real estate at 423 Green Lane, which they purchased for $45,000 in January of 2007, and a rental house at 2622 Pennington Avenue purchased for $39,500 in July of 2009. The parties built an addition onto the Pennington Avenue house, remodeled it, and rented it out for $925 per month. At the time of trial, the parties acknowledged that there were no outstanding liens on any of their rental properties.

The relationship between the parties became strained, and Ms. Morrow moved out of the Myrtle Street home in December of 2011. Although she later moved back in, pursuant to an agreed order, the parties remained estranged.

## II. TRIAL COURT PROCEEDINGS

On January 11, 2012, Ms. Morrow filed a complaint in the Chancery Court of Davidson County. She contended that the parties' relationship constituted a partnership because they had entered into an agreement to share income and liabilities equally and to "pool their labors and resources, cohabit and work together to increase their assets." Because of the disputes that had arisen between the parties over those assets, she asked the court to dissolve the partnership and to divide the partnership property, including BGM Cleaners. In the alternative, she asked the court to order the partition and sale of the properties that the parties owned as tenants in common

In his answer to the complaint, Mr. McClain asserted that the parties had led separate business lives, and he denied that they had ever agreed to equally share income and liabilities as business partners. He also argued that none of the real property should be subject to partition.

The case was tried on July 18 and 19, 2012. Ms. Morrow testified that after Mr. McClain moved in with her, the parties decided that they would marry one day, and they pooled their resources to become partners. She acknowledged that they never entered into a written agreement or even discussed their relationship as a partnership, but that "it just happened." Mr. McClain denied that they ever agreed to become partners. Regardless, the parties' actions during the time they were together showed high levels of cooperation, both in terms of labor and of finances. The proof showed that there was a great deal of intermingling of their respective contributions.

The income tax returns of the parties showed that their earnings were about equal. Ms. Morrow earned between $32,000 and $35,000 each year from her job at the Tennessean. Mr. McClain's earnings from BGM Cleaners and from his property rental business varied more from year to year, but averaged about the same as Ms. Morrow's. Both parties maintained individual bank accounts, but they also had a joint account that they used for

some purchases.

Ms. Morrow testified that she used her retirement funds to contribute $12,000 to the purchase of the Green Street property and that she did extensive work on the renovation of the Pennington Street Property. Mr. McClain acknowledged her financial contribution to the acquisition of the Green Street property, but denied that she had contributed anything of value in terms of labor to the Pennington Street project. Ms. Morrow also testified that she paid the property taxes from her own funds for many of the properties the parties acquired, including properties that were not in her name. But Mr. McClain testified that he had agreed to allow her to take income tax deductions for the property tax on the Myrtle Street house in exchange for her agreement to pay the taxes on the other properties.

At the conclusion of testimony, the trial court announced its ruling from the bench. The court discussed in detail the parties' testimony as to their financial dealings and the supporting documents that were entered into evidence. The court noted that both parties were hard workers, but declared that it found Ms. Morrow to be a more credible witness than Mr. McClain with regard to the parties' financial dealings.

The court declined to find that a partnership had existed between the parties and ruled that Mr. McClain should remain the sole owner of BGM Cleaners[1] and the Chesapeake Place real property. However, the court also found that by virtue of her labor and her financial contributions, Ms. Morrow had acquired a property interest in all the real property acquired during the parties' relationship, whether titled jointly or individually. The court also determined that it would not be advantageous to either party to sell the real property, but decided instead to divide the property based on the relative contributions of the parties.

The court's ruling was memorialized in a Final Order and Judgment filed on August 2, 2012. Ms. Morrow was awarded the home on Myrtle Street, and was held solely responsible for payment of the mortgage and all other expenses on the property. As payment for her interest in the other real property, Ms. Morrow was awarded $50,000, which was to be paid by Mr. McClain in monthly installments of $500.[2] This appeal followed.

---

[1]Ms. Morrow claimed a partnership interest in the cleaning business. She had helped Mr. McClain in the operation of his dry cleaning business, but the parties gave widely differing testimony as to the extent of Ms. Morrow's assistance. The trial court's holding regarding the business is not challenged in this appeal, and we need not discuss the testimony on this issue.

[2]The award is secured by liens on the properties that were held by tenancy in common.

-4-

### III. THE STANDARD OF REVIEW

Because this was a non-jury case, we review the trial court's findings of fact on appeal *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). Further, when a trial court has had the opportunity to observe the witnesses' demeanor and to hear directly from them, we accord considerable weight to those of the trial court's factual findings that rest on its determinations of credibility. *In re Estate of Walton v. Young*, 950 S.W.2d at 959*; Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

### IV. ISSUE ON APPEAL

The trial court found:

(1) The proof does not sustain the claim that an implied partnership existed between the parties; however, Plaintiff has established by a preponderance of the evidence that she has a property ownership interest in all of the properties owned by either party,[3] whether as tenants in common or individually.

The trial court then awarded Ms. Morrow the Myrtle St. house, free of any claim by Mr. McClain, along with sole responsibility for the mortgage. The court also awarded Ms. Morrow $50,000 "with regard to Plaintiff's interest in the remaining properties."

Mr. McClain argues on appeal that the trial court's division of the real property was inequitable because the court overestimated the contributions of Ms. Morrow to the acquisition, preservation, and improvement of the real property at issue and underestimated his own "financial contributions, management, and control" of those parcels. He asks this court to remand the case for a division of property on a quantum meruit basis and to allow it to be sold, with the proceeds divided in an equitable manner.

---

[3]The court did not explain the legal basis for this conclusion, but it clearly was factually based upon the evidence regarding financial contributions and the intermingling of those contributions among the various parties.

In other words, Mr. McClain does not challenge the holding that Ms. Morrow had a property interest in all real property owned by the parties; instead, he disagrees with the court's calculation of Ms. Morrow's interest and asserts, "Under all circumstances, the Court must realistically access [sic] the contributions of each party on the basis and amount of merit of each of the parties."

Although Ms. Morrow argues that the evidence would support a finding that a partnership did exist, she does not disagree with the trial court's disposition of the real property interests and asks us to affirm the judgment.[4] She also points out that the trial court's division of property interests is supported by the evidence, even if only those properties held as tenants in common are considered in the calculation.

Accordingly, we perceive the issue on appeal to be whether the trial court's division of interests in real property was supported by a preponderance of the evidence.

## V. DIVISION OF REAL PROPERTY INTERESTS

The transcript of the trial court's ruling reveals more of the court's reasoning. "It is apparent that these people were operating as though they both had ownership interest in the real estate they held jointly, and to some extent, the real estate in which Mr. McClain held title solely in his name." The transcript also shows how the court arrived at its award, based upon the value of the properties, financial and other contributions, remaining equity and liabilities. By its explanation, it is clear that the court assessed each party's interest at 50%.

In explaining one portion of its calculation, the trial court explained its reasoning, stating, "I did that because the . . . proof reflects that the proceeds from the Myrtle Street financing in 2009 was used to acquire many of these parcels. The income of Ms. Morrow, likewise, was used in a joint fashion with Mr. McClain."

The trial court found that both were hard workers who managed to accumulate quite a bit of property as a result of their joint efforts. Mr. McClain tried to minimize the extent of Ms. Morrow's contributions, but the court found her testimony to be more credible than his. As we observed above, the trial court is in a better position to assess the credibility of the parties than is this court, and we accordingly accord great deference to its findings of fact when these are based on its assessments of credibility.

The record of this case includes the property tax appraisals of all the properties

_____

[4]Accordingly, it is not necessary for us to discuss the law of partnership or the facts of this case relevant to the existence of a partnership.

acquired by the parties. The proof indicated that Ms. Morrow made a financial contribution to many of those properties, even the ones that were titled solely in Mr. McClain's name, through the application of mortgage loan proceeds to their purchase, the payment of property taxes, and use of her retirement funds or other money. She also testified that she contributed to the development of some of those properties by buying materials for renovations, performing landscaping work, and taking time off from her job to apply for necessary permits.

The trial court carefully went through the testimony and the financial records that were available and calculated the equity in the real properties. Mr. McClain does not dispute any of the figures used by the court. Nor does he offer an alternative calculation of the value of the real properties. The trial court's calculations are supported by the evidence introduced by the parties.

We agree with Ms. Morrow that the award is supported by the evidence even if the calculation considers only the three properties owned as tenants in common. The law presumes that tenants in common share equal rights to their commonly-held property. *See Moore v. Cole*, 289 S.W.2d 695 (Tenn. 1956); *Garland v. Holston Oil Co.*, 386 S.W.2d 914, 915 (Tenn. Ct. App. 1964).

Further, any such tenant is entitled to ask the court to order the partition of the property, either in kind or by sale. Tenn. Code Ann. § 29-27-101. "It is the policy of the law to give each person his own in severalty and not to force him to continue in partnership with another." *Hale v. Hale*, M2010-00760-COA-R3-CV, 2011 WL 773440 at *4 (Tenn. Ct. App. Mar. 4, 2011) (citing *Nicely v. Nicely*, 293 S.W.2d 30, 32 (Tenn. Ct. App. 1956)). The court in this case determined that because the partition and sale of the disputed properties would not be beneficial to either party, a different method of equitably dividing the property was required. Its actions were in line with the recognition that Tennessee courts "have a measure of discretion as to the manner of partition." *Hale v. Hale,* 2011 WL 773440 at *3 (quoting *Yates v. Yates*, 571 S.W.2d 293, 296 (Tenn. 1978)).

The Tax Assessor set the valuation of the Myrtle Street Property at $283,000. But that property was encumbered by a mortgage loan with a remaining balance of $235,000, for payment of which Ms. Morrow was left solely responsible. Therefore, the value of the equity in the property awarded to her was $48,000. The valuation of the Green Lane Property was set at $54,000. The valuation of the Pennington Avenue Property was $118,000. Neither of those properties was encumbered. Adding the value of the equity in the three properties produces the sum of $220,000.

If the trial court had chosen to equally divide the value of the commonly-held property, it could have fashioned an award for Ms. Morrow with a value of $110,000. But the total value of her award was slightly less - $98,000 ($48,000 plus $50,000). Thus, Mr. McClain should not be heard to complain that the award was inequitable as to him.

We affirm the trial court's judgment.

**VI**.

The judgment of the trial court is affirmed. We remand this case to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Ray Anthony McClain.

_____
PATRICIA J. COTTRELL, JUDGE